IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID SCHWARTZ                           *

     Plaintiff,                        *

v.                                       *          Civil Action No.: RDB 06-2851

KENNETH BLUM, *et al*.,                  *

     Defendants.                       *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This action arises out of a Complaint that David Schwartz ("Plaintiff") filed against

Kenneth Blum, Kenneth Blum, II, and William A. Richter ("Defendants"), and Counterclaims

that Defendants filed against Plaintiff.  Each litigant was formerly associated with Rent-A-Wreck

of America, Inc. ("RAWA"): Plaintiff is a former shareholder; Defendants Blum and Blum II,

are former officers; and Defendant Richter is a former director.  The Complaint alleges that

Defendants engaged in improper conduct that resulted in the sale of Plaintiff's RAWA shares at

a deficient price.  The Counterclaims assert that Plaintiff abused the civil justice system by filing

an action in the State of California for the improper purpose of engineering RAWA's takeover.

Currently pending before this Court are three motions: Plaintiff's Motion to Dismiss the

Counterclaims (Paper No. 12); Defendants' Motion to Dismiss the Complaint (Paper No. 15);

and Defendants' Motion for Summary Judgment (Paper No. 31).  This Court has diversity

jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The parties' submissions have been

reviewed and a hearing was conducted on August 9, 2007.  For the reasons that follow, the

pending motions will be GRANTED and this case will be CLOSED.

## <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff David Schwartz is the founder, and was a longtime shareholder, of RAWA

Defendant Kenneth Blum was the CEO of RAWA before it merged with MBFG, Inc. ("MBFG")

in January 2006.  Defendant William A. Richter was a Director of RAWA and "held a

controlling interest of RAWA's preferred stock as well as substantial common stock" until that

same merger.  (Compl. ¶ 6; Answer ¶ 6.)  Finally, Defendant Kenneth Blum, II was the President

of RAWA until October 2004.

Plaintiff's Complaint alleges that Defendants engaged in a pattern of mismanagement and

self-dealing beginning in approximately 1994.  Specifically:

- On an unspecified date, "the Blums, with Richter's acquiescence and at times active participation, began to run RAWA as if it were their own personal fiefdom."  (Compl. ¶ 10.)

- On an unspecified date, "RAWA retained Blum Jr.'s companies National Computer Services . . . and ABIS to develop a software system for RAWA . . . [even though] the need for the proposed software system was dubious. . . ."  (*Id*. at ¶ 11.)

- On an unspecified date, "[t]he Blums lined their pockets at the expense of RAWA's shareholders, through another Blum company, KA Real Estate Associates, L.L.C. . . . that leased space to RAWA. . . ."  (*Id*. at ¶ 12.)

- On an unspecified date but "[e]specially after . . . the early 2000s, the Blums were paid excessive fees through K.A.B., Inc. for the management of RAWA."  (*Id*. at ¶ 13.)

- On an unspecified date, "Blum Jr. And Richter also purchased cars through RAWA or RAWA subsidiaries for re-sale, while maintaining the profits from the re-sale for their own benefit."  (*Id*. at ¶ 15.)

- On an unspecified date, "[t]he Blums also abused company credit cards, and otherwise diverted company funds for their own benefit."  (*Id*. at ¶ 17.)

- On an unspecified date, "[t]he Blums and their family members also used company cars without compensating RAWA."  (*Id*. at ¶ 18.)

Although the relevant dates are not identified, the Complaint indicates that the conduct described above occurred beginning in 1994 and lasting through approximately the early 2000s.  (*Id*. at ¶¶ 10-18.)

Plaintiff also alleges that Defendants "covered up" portions of their wrongdoing by "delisting" RAWA's shares from Nasdaq.  Plaintiff avers that two long-time RAWA employees—Mitra Ghahramaniou and Alan Wagner—brought their concerns about the Blums' misconduct to the attention of Defendant William A. Richter in early 2000.  (Compl. ¶ 19.) However:

> Rather than satisfying his fiduciary obligations to RAWA, Richter sided with the Blums. As a result, shortly after voicing his concerns about the Blums, Ms. Ghahramaniou and Mr. Wagner were effectively forced out of RAWA.  Thereafter, as discussed below, the Blums, with Richter's knowledge and consent, engaged in what amounted to a cover up of their wrongdoing.
>
> In the wake of the concerns raised by Ms. Ghahramaniou and Mr. Wagner, by August 30, 2002, RAWA filed to delist its shares from Nasdaq.  On information and belief, it was no coincidence that RAWA filed to delist from Nasdaq the month following the enactment of the Sarbanes-Oxley Act.  To the contrary, on information and belief, the delisting was the result of Richter and the Blum's fear that as a result of the financial improprieties to which they were both witnesses and active participants, the requirements of the Sarbanes-Oxley Act posed too great a personal risk to them.

(*Id*. at ¶¶ 20-21.)  Plaintiff contends that RAWA's delisting caused him to suffer a "great financial loss. . . ."  (*Id*. at ¶ 22.)

Plaintiff then asserts that "[i]n the 2004 to 2005 time frame, Richter and Blum sought to extract themselves from the problems created by the corrupt conduct described herein . . . by looking for a buyer for RAWA."  (Compl. ¶ 27.)  One such buyer was San Diego Car Rentals,

Inc. ("SDCR").  At some point in 2005, a merger between SDCR and RAWA was proposed.  On

November 16, 2005, however, Plaintiff sought to prevent this merger by filing a complaint

against Defendants and others in the United States District Court for the Central District of

California (the "California Action").  (*See* Counter-Compl. ¶ 1.)  Plaintiff requested immediate

injunctive relief to prevent a special shareholders meeting of RAWA scheduled for purposes of

voting on the proposed merger.  In that same lawsuit, moreover, Plaintiff asserted breach of

fiduciary duty claims that were based in part on factual allegations that Plaintiff has also placed

at issue in this case.  (*Id*. at ¶¶ 2-3.)  Defendants maintain that Plaintiff improperly used the

California Action as a "bargaining chip" in his attempt to obtain control of RAWA.  (*Id*. at ¶ 18.)

In January 2006, RAWA entered into a merger agreement with MBFG.  Plaintiff alleges

that "[a]s part of the MBFG merger, the Blums obtained a waiver and release of all claims

arising from the facts contained in [an audit report that allegedly details Defendants'

misconduct]."  (Compl. ¶ 30.)

> RAWA was worth more than the merger compensation provided
> for under the MBFG agreement because, among other reasons, its
> value included claims against the Defendant.  Hence, if Defendants
> had honored their fiduciary duties to all shareholders, there would
> have had [sic] an open process which allowed other suitors to bid
> more, because they were also receiving the value of those claims.
>
> RAWA was worth more than the merger compensation provided
> for under the MBFG agreement because, among other reasons the
> Defendants' violations of their fiduciary obligations resulted in a
> dramatic decrease in the value of the shares redeemed due to, *inter
> alia*, the delisting of RAWA from Nasdaq.

(*Id*. at ¶¶ 35-36.)  Plaintiff assesses the resulting damages that he suffered at an amount "believed

to exceed $2 million."  (*Id*. at ¶ 37.)

On October 30, 2006, Plaintiff filed a Complaint in this Court.  On December 11, 2006,

Defendants filed their Counterclaims.  On January 2, 2007, Plaintiff filed the subject Motion to

Dismiss Defendants' Counterclaims.  (Paper No. 12.)  On February 9, 2007, Defendants filed the

subject Motion to Dismiss Plaintiff's Complaint.  (Paper No. 15.)  On April 16, 2007,

Defendants filed the subject Motion for Summary Judgment.  (Paper No. 31.)

## STANDARD OF REVIEW

### I.    Motions To Dismiss.

Both parties invoke Rule 12(b)(6) of the Federal Rules of Civil Procedure in their

Motions to Dismiss.[1]  "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a

complaint'" and not to "'resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.'"  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)).  As the legal

sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the

truth of all facts alleged in the complaint and the existence of any fact that can be proved,

consistent with the complaint's allegations."  *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*,

213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded

---

[1]    Defendants' Motion to Dismiss (Paper No. 15) was filed *after* Defendants
submitted an Answer (Paper No. 4) to the Complaint.  As a result, Defendants' motion shall be
treated as a Motion for Judgment on the Pleadings under Rule 12(c) and not a Motion to Dismiss
under Rule 12(b).  *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed but within such time
as not to delay the trial, any party may move for judgment on the pleadings."); *see also* 5A C.
Wright & A. Miller, Federal Practice & Procedure § 1367 (West 1990) (pleadings are considered
closed "upon the filing of a complaint and answer.") (citing Fed. R. Civ. P. 7(a); footnotes
omitted).  Such treatment makes no practical difference, however, as the standard of review for a
Rule 12(c) motion and a Rule 12(b)(6) motion is identical.  *Burbach Broad. Co. v. Elkins Radio
Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243
(4th Cir. 1999).

allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

## II.     Motion for Summary Judgment.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

6

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'" *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

I.    **Defendants' Motions to Dismiss the Complaint and, Alternatively, for Summary Judgment.**

Defendants move to dismiss Plaintiff's Complaint on two grounds: (1) Plaintiff lacks standing to challenge the merger because he does not own any RAWA shares; and (2) Plaintiff cannot challenge the merger because he accepted the benefits of that transaction. Alternatively, Defendants maintain in their Motion for Summary Judgment that they are entitled to judgment as

a matter of law because the cause of action set forth in the Complaint is barred under the applicable statute of limitations.

As already noted, Plaintiff's Complaint asserts a single cause of action for "breach of fiduciary duty" in connection with the 2006 merger between RAWA and MBFG  (*See* Compl. ¶¶ 33-38.)  It is difficult to discern from the Complaint, however, whether Plaintiff's cause of action constitutes (1) an attack on the fairness of the price paid in the 2006 merger that is made *without regard* to underlying allegations of self-dealing or mismanagement, or (2) an attack on the fairness of that merger price that is *based* on underlying allegations of self-dealing or mismanagement.  (*Id*.)  For reasons explained below, this distinction has no bearing on the outcome of this case.  To the extent that Plaintiff's claim is made without regard to underlying allegations of mismanagement, that claim must be dismissed because Plaintiff accepted the benefits of the 2006 merger transaction. *See infra* Discussion I.B (granting Defendants' Motion to Dismiss).  To the extent that Plaintiff's claim depends on underlying allegations of mismanagement, that claim is barred by the applicable statute of limitations.  *See infra* Discussion I.C (granting Defendants' Motion for Summary Judgment).  As a result, Defendants' Motions to Dismiss and for Summary Judgment will be GRANTED.

## A.      Standing.

Initially, Defendants move to dismiss the Complaint on grounds that Plaintiff—who is no longer a former shareholder of RAWA—lacks standing to pursue breach of fiduciary claims that constitute derivative (not direct) claims under Delaware law.  In their papers and at the hearing, however, Defendants agreed that Plaintiff's challenge to the 2006 merger is a direct claim that is not subject to Defendants' arguments regarding lack of standing.  (*See*, *e.g.*, Paper No. 15 p. 7

("[A]ll of the breach of fiduciary duty allegations, *other than the challenge to the merger*, are derivative claims.") (emphasis added).)  Plaintiff clarified at the hearing, moreover, that he intends to assert nothing other than a direct challenge to the 2006 merger.  Accordingly, this Court finds that Schwartz has standing to bring a direct claim in challenge to the 2006 merger.

### B.    Plaintiff Accepted Benefits of Merger.

Defendants argue that Plaintiff cannot attack the January 2006 merger between RAWA and MBFG because he tendered his RAWA shares for an unspecified sum of money on October 26, 2006—four days before filing the instant Complaint—and therefore accepted the benefits of that merger.  Plaintiff responds that this argument relies on a faulty interpretation of Delaware law.[2]

In *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987), the Supreme Court of Delaware determined that:

> [W]hen an informed minority shareholder either votes in favor of the merger, or like Bershad, accepts the benefits of the transaction, he or she cannot thereafter attack its fairness.  Since Bershad tendered his shares and accepted the merger consideration, he acquiesced in the transaction and cannot now attack it.

---

[2]    In a diversity case, a United States District Court sitting in Maryland applies Maryland's choice of law rule.  This principle has been settled since *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), which extended the rule of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), to choice of law questions.  In this case, the parties agree that Delaware law applies to Plaintiff's cause of action for breach of fiduciary duty. (*See* Paper No. 15 p. 3 (where Defendants apply Delaware law to the cause of action set forth in the Complaint); Paper No. 20 p. 2 (where Plaintiff does the same)); *see also NAACP v. Golding*, 679 A.2d 554, 559 (Md. 1996) (acknowledging the "internal affairs doctrine," a conflict of laws principle "which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.").

*Id*. at 848 (citing *Trounstine v. Remington Rand, Inc.*, 194 A. 95, 99 (Del. Ch. 1937)).  After

explaining that Plaintiff admits to tendering his shares in the Complaint, Defendants argue that

"[b]ecause Schwartz . . . pleaded himself squarely within the *Bershad* rule, the Court should

grant the Motion to Dismiss for failure to state a claim challenging the merger."  (Paper No. 15

p. 5.)

      A number of decisions from the Delaware Court of Chancery, however, suggest that the

Delaware Supreme Court's holding in *Bershad* is confined to a limited set of facts.  In *In re Best*

*Lock Corp. Litigation*, 845 A.2d 1057, 1079 (Del. Ch. 2001), for example, the Court explained

that:

> The plaintiffs in *Bershad* were challenging only the fairness of the
> price paid in the merger.  Those plaintiffs would have been entitled
> to do exactly that in a statutory appraisal action if they had
> perfected their appraisal rights rather than voting in favor of the
> merger or tendering their shares.  By voluntarily and knowingly
> exchanging their shares (and their appraisal rights) for the merger
> consideration, however, plaintiffs like *Bershad* lost any right in
> equity to seek a quasi-appraisal.  The result in *Bershad* would, in
> my opinion, have been different had the plaintiffs raised a
> colorable duty of loyalty claim, as the plaintiffs in this case have
> done, or if there had not been a ratifying vote of the minority
> shareholders.

*Id*. at 1079; *see also In re JCC Holding Co., Inc.*, 843 A.2d 713, 722-23 (Del. Ch. 2003)

(interpreting *In re Best Lock Corp.* as holding "that a stockholder who casts a vote in favor of, or

later accepts the consideration from, a merger effected by a controlling stockholder is not barred

by the doctrine of acquiescence, or any other related equitable doctrine such as waiver, from

challenging the fairness of the merger in an equitable action."); *Gesoff v. IIC Indus., Inc.*, 902

A.2d 1130, 1143 n.89 (Del. Ch. 2006) (acknowledging the "apparent inconsistency" between

*Bershad* and more recent decisions such as *In re Best Lock Corp*).

After reviewing the parties' submissions and the relevant decisions, this Court concludes that rule of *Bershad* precludes Plaintiff from seeking recovery in this action with respect to certain claims. First, there is no dispute that Plaintiff accepted the benefits of the 2006 merger by tendering his shares on October 26, 2006.[3] Second, this Court finds that Plaintiff's attempt to distinguish *Bershad* is not persuasive. In *In re Best Lock.*, which Plaintiff relies on to distinguish *Bershad*, the Delaware Court of Chancery emphasized that "[t]he result in *Bershad* would, in my opinion, have been different had the plaintiffs raised a colorable duty of loyalty claim. . . ." 845 A.2d at 1079. Here, Plaintiff *fails* to raise a colorable self-dealing claim for reasons set forth below. *See infra* Discussion § I.C (concluding that Plaintiff's cause of action depends on underlying allegations of mismanagement that are barred by the statute of limitations). As a result, this Court concludes that Plaintiff's challenge to the merger falls within the *Bershad* rule to the extent that such challenge is not based on underlying allegations of self-dealing or mismanagement and, accordingly, Defendants' Motion to Dismiss is GRANTED.

C.     **Statute of Limitations.**

Alternatively, Defendants contend in their Motion for Summary Judgment that they are entitled to judgment as a matter of law in that Plaintiff's claim for breach of fiduciary duty is barred under the applicable statute of limitations. In response, Plaintiff claims that the statute of limitations in this case should be tolled because culpable directors were in control of the corporation during the relevant time. These arguments are addressed in turn below.

The parties agree that Plaintiff's claim for breach of fiduciary duty is governed by the

---

[3]        Plaintiff filed the Complaint in this action four days later on October 30, 2006.

11

Maryland statute of limitations applicable to civil actions.[4]  That statute provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Code Ann., Cts. & Jud. Proc. § 5-101.  In addition, Maryland courts have adopted the "discovery rule" which provides that a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md.1981).

As noted above, Plaintiff's single claim for breach of fiduciary duty is intended as a direct (not derivative) shareholder claim attacking the fairness of the 2006 merger between RAWA and MBFG.  This claim depends, however, on underlying allegations of mismanagement that *predate* the 2006 merger.  As Plaintiff candidly acknowledges in his papers:

> Plaintiff is attacking the fact that Defendants demanded a waiver and release clause in the merger agreement to shield themselves from potential liability *arising out of their previous mismanagement* which resulted in a lower price term than would have otherwise been achieved and, that by doing so, Defendants placed their own interest above the interests of RAWA and its shareholders when negotiating and effectuating the merger

---

[4]       (*See* Paper No. 31 p. 1 (where Defendants apply the Maryland statute of limitations to the cause of action set forth in the Complaint); Paper No. 34 pp. 5-6 (where Plaintiff does the same).)  Even if the parties are mistaken in this regard, *see supra* Discussion § 1.A at n.2 (discussing Maryland choice of law principles), the result would be the same under Delaware law.  *See, e.g., Fike v. Ruger*, 754 A.2d 254, 261 (Del. Ch. 1999) ("Under Delaware law, a three-year statute of limitations applies to claims for breach of contract or breach of fiduciary duty.") (citing 10 Del. C. § 8106); 10 Del. C. § 8106 ("No action . . . to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action . . . .").

(including the price terms therein).[5]

(Paper No. 20 p. 7 (emphasis added); *see also* Paper No. 34 p. 3 (same).)  This is important

because if the underlying claims are barred by the statute of limitations, then (unless there is a

basis for tolling the limitations period) Plaintiff's attack on the 2006 merger must also fail.  After

all, if there was no "potential liability" for claims "arising out of their previous mismanagement"

at the time of the 2006 merger, then there is no basis for concluding that the waiver and release

clause allegedly negotiated by Defendants resulted in a "lower price term than would have

otherwise been achieved. . . ."  (Paper No. 20 p. 7.)

     After reviewing the parties' submissions and hearing argument from counsel, this Court

concludes that any claims that are based or depend upon the underlying allegations of

mismanagement are barred by the statute of limitations.  First, although the Complaint does not

identify the dates of the alleged mismanagement, it indicates that the conduct at issue occurred

from approximately 1994 through the early 2000s.  *See* Factual Background and Procedural

History *supra* (delineating allegations set forth in the Complaint); (Compl. ¶¶ 10-18.)  Second,

Plaintiff effectively concedes that the underlying conduct at issue occurred many years before

the 2006 merger.  For example, Plaintiff's opposition papers repeatedly describe the underlying

conduct as occurring in the 1990s.[6]  Plaintiff did not request additional time for discovery in

---

     [5]      At the hearing, Plaintiff's counsel conceded that the "waiver and release clause" at issue is not, in fact, contained within the merger agreement.

     [6]      (*See* Paper No. 34 p. 1 (referencing "Defendants' self-dealing during the 1990's"), p. 3 ("Plaintiff's allegations of Defendants' decade-long self dealing are directly tied to the 2006 Merger and are relevant as to the reasons why Defendants effectuated the Merger."), p. 4 (referencing "Defendants' self-dealing in the 1990's."), p. 5 (acknowledging that "Defendants seek to demonstrate to this Court that Plaintiff had actual knowledge and notice of Defendants' self-dealing in the 1990's. . . .")

those papers, and has not requested an opportunity to supplement his papers with additional legal argument or evidence.  At the hearing on August 9, 2007, Plaintiff did not dispute that the underlying allegations of mismanagement occurred on dates that are well-outside the three-year statute of limitations.  Finally, there is no dispute that Plaintiff was aware of the conduct at issue many years prior to 2006.[7]  As a result, this Court concludes that any claims that are based or depend upon those allegations—*e.g.*, claims that Plaintiff alleges were shielded by the "waiver and release" clause in the 2006 merger agreement—are barred by the three-year statute of limitations.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101; *Poffenberger*, 431 A.2d at 680.[8]

In addition, Plaintiff fails to present a sufficient basis for tolling the statute of limitations.  Indeed, the sole argument offered by Plaintiff in this regard is as follows:

> As explained by the Court in *Federal Sav. & Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184 (D. Md. 1984), the statute of limitations is tolled on claims for breach of fiduciary duties until such time as the interested fiduciaries no longer control the corporation, since such self-dealing fiduciaries cannot be expected to bring a claim on behalf of the corporation against themselves. . .

(Paper No. 34 p. 5.[9])  This argument fails because, *inter alia*, Plaintiff fails to establish sufficient

---

[7]      At the hearing, Plaintiff's counsel acknowledged that Plaintiff was "not in the dark" with respect to the alleged mismanagement at issue.  Plaintiff makes no attempt to argue, moreover, that he did not learn about the underlying conduct at a time that would allow his claim to fall within the "discovery rule."  *Cf. Poffenberger*, 431 A.2d at 680 (Explaining that a "cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong.").

[8]      *Cf. Halpern v. Barran*, 313 A.2d 139, 141-43 (Del. Ch. 1973) ("It is by now firmly established that the three-year statute of limitations, 10 Del.C. § 8106, applies to shareholder derivative actions which seek recovery of damages or other essentially legal relief.").

[9]      This Court notes that Plaintiff's reliance on *Federal Sav. & Loan Ins. Corp. v. Williams*, 599 F. Supp. 1184 (D. Md. 1984) is misplaced.  The tolling analysis in that decision is focused on 28 U.S.C. § 2416, not the Maryland statute of limitations.  *See id*. at 1193-1195.

support for the claim that the fiduciaries at issue here—the directors of RAWA—were interested,

culpable, or in control of the corporation.  Instead, Plaintiff relies exclusively on allegations set

forth in the Complaint.  (*See* Paper No. 34 p. 6 ("As set forth in Plaintiff's Complaint,

Defendants controlled the corporation (RAWA) until the effectuation of the 2006 Merger.")

(citing Compl. ¶¶ 3-6).)  Such allegations are insufficient to defeat Defendants' Motion for

Summary Judgment on the matter of limitations.  First, it is well-established that "[w]hen a

motion for summary judgment is made and supported as provided in this rule, an adverse party

may *not* rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed. R.

Civ. P. 56(e) (emphasis added).  Second, Plaintiff made no effort to request time for discovery or

supplement his opposition papers with additional legal argument or evidence.  Finally, at the

hearing on August 9, 2007, the parties submitted excerpts from the deposition of Defendant

William A. Richter.[10]  (*See* Paper Nos. 87-88 (the "Richter Dep.").)  Those excerpts do not

support Plaintiff's allegation that "Defendants controlled the corporation."  (Paper No. 34 p. 6.)

Instead, Defendant Richter testified as follows:

> Q.      And you have already testified that you controlled the
>         board, correct?
>
> A.      No.  The other members were independent, and I absolutely
>         did not have control over them.  I think they took their

---

Similar principles for tolling the Maryland statute of limitations, however, are set forth in *Hecht v. Resolution Trust*, 635 A.2d 394, 405-407 (Md. 1994).

[10]      The purpose of submitting such excerpts was to determine which of the parties' representations regarding the testimony of Defendant Richter was correct.  Plaintiff's counsel had represented to this Court that Defendant Richter testified that he controlled the Board of Directors of RAWA.  Defendants' counsel disputed this representation.  The deposition of Defendant Richter was taken in connection with a civil action pending before the Superior Court for the State of California in the County of San Diego.

> fiduciary responsibilities extremely seriously, and I worked
> very hard to find highly credible, independently successful
> individuals to serve in that capacity.  I did not want rubber
> stamp or yes people.

> Q.     You had the ability to appoint the board?

> A.     I also had the ability to nominate four directors, but never
>        exercised it.

(Richter Dep. p. 45, l. 24 - p. 46 l. 13.)  As a result, this Court concludes that Plaintiff fails to set

forth a sufficient basis for tolling the statute of limitations.[11]

   In sum, Plaintiff's cause of action for breach of fiduciary duty is based on the claim that

the 2006 merger contained a "waiver and release clause" that protected Defendants from liability

arising out of prior mismanagement.  The underlying allegations of prior mismanagement,

however, are not actionable under the applicable statute of limitations.  As a result, there is no

basis for concluding that the waiver and release clause allegedly negotiated by Defendants

resulted in a "lower price term than would have otherwise been achieved."  Accordingly,

Defendants' Motion for Summary Judgment is GRANTED with respect to any claims that are

based or depend upon allegations of mismanagement that occurred before 2006 .

---

[11]     *Cf. In re Oracle Corp. Derivative Litigation*, 824 A.2d 917, 920 (Del. Ch. 2003)
("The question of independence turns on whether a director is, for any substantial reason,
incapable of making a decision with only the best interests of the corporation in mind.") (citation
and internal quotation marks omitted).

II.     **Plaintiff's Motion to Dismiss.**

The three-count Counterclaim asserts causes of action for abuse of process, malicious use of civil process, and tortious interference with economic relationship.  (*See* Counter-Compl. ¶¶ 27-37.)  At the hearing, Defendants' counsel candidly acknowledged that there is no basis for pursuing these causes of action on behalf of Defendants Kenneth Blum and Kenneth Blum, II.  Accordingly, the counterclaims asserted on behalf of those Defendants will be DISMISSED, and Plaintiff's Motion to Dismiss will be considered only in connection with the counterclaims asserted by Defendant William A. Richter ("Richter").

A.     **Abuse of Process.**

The elements of an abuse of process claim are: "'first, that the defendant wilfully used process after it has issued in a manner not contemplated by law; second, that the defendant acted to satisfy an ulterior motive; and third, that damages resulted from the defendants use of perverted process.'"  *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1044 (Md. Ct. Spec. App. 2004), *cert. denied*, 837 A.2d 926 (Md. 2003) (quoting *One Thousand Fleet Ltd. P'ship v. Guerriero*, 694 A.2d 952, 956 (Md. 1997)).

Plaintiff contends that Richter's abuse of process claim must be dismissed because he fails to allege any facts to support the required element of damages, *i.e.*, the third element discussed above.  Specifically, Plaintiff emphasizes that "to maintain a claim for abuse of process the plaintiff *must* allege that he was unlawfully arrested or his property unlawfully seized."  *Campbell*, 852 A.2d at 1044 (emphasis added) (citations omitted).  In response, Richter argues that the damages element of this tort can be interpreted to include a "special damages" or "special injury" category in addition to the standard requirements of unlawful arrest and seizure.

(*See* Paper No. 13 p. 3-10.)   The parties do not dispute that Richter does *not* allege unlawful

arrest or seizure.

After reviewing the cases cited by Richter, this Court concludes that Maryland law

requires an allegation of unlawful arrest or seizure to support the damages element of an abuse of

process claim.  The Maryland Court of Appeals confronted this issue directly on at least one

occasion:

> A cause of action for civil abuse of process in Maryland requires
> that the plaintiff establish that an arrest of the person or a seizure
> of property of the plaintiff resulted from the abuse of process.
> *Bartlett v. Christhilf*, 14 A. 518, 522 (Md. 1888).  Judge McSherry,
> writing for the Court in *Bartlett*, described the scope of abuse of
> process: "All the cases upon this subject depend either upon the
> arrest of the person or the seizure of his property; and we have
> been referred to none where this action was sustained for an injury
> to the plaintiff's business or good name.  Any unfounded suit may
> result in such injury; but it will hardly be seriously contended that
> where there has been no wrongful deprivation of liberty or no
> illegal seizure of property, that each unfounded suit is to be treated
> as such an abuse of the process of the law as will sustain action
> against the one who instituted it."  *Id*. at 522.

*One Thousand Fleet*, 694 A.2d at 960.  Drawing on *One Thousand Fleet*, the Maryland Court of

Special Appeals reached precisely the same result:

> Moreover, to maintain a claim for abuse of process the plaintiff
> must allege that he was unlawfully arrested or his property
> unlawfully seized.  *Herring v. Citizens Bank and Trust Co.*, 321
> A.2d 182, 193 (Md. Ct. Spec. App. 1974) ("[T]he injuries
> contemplated by this particular tort (and an indispensable element
> of it) are limited to an improper arrest of the person or an improper
> seizure of property."); *see also One Thousand Fleet*, 694 A.2d at
> 960 ("The plaintiff [must] establish that an arrest of the person or a
> seizure of property of the plaintiff resulted from the abuse of
> process.").  Unfortunately, appellant has failed to allege either
> impropriety.

*Campbell*, 852 A.2d at 1044.  In addition, this Court has reviewed the cases relied upon by

Defendant Richter, (*see* Paper No. 13 p. 3-10), and those cases only mention the "special

damages" or "special injury" category in connection with the tort of malicious use of civil

process, not abuse of process.  Accordingly, Plaintiff's Motion to Dismiss is GRANTED with

respect to the abuse of process claim asserted by Defendant Richter.  *Campbell*, 852 A.2d at

1044; *Herring*, 321 A.2d at 193; *One Thousand Fleet*, 694 A.2d at 960.

> **B.      Malicious Use of Civil Process.**

The elements of a claim for malicious use of civil process are:

> *First*, a prior civil proceeding must have been instituted by the
> defendant.  *Second*, the proceeding must have been instituted
> without probable cause. . . . *Third*, the prior civil proceeding must
> have been instituted by the defendant with malice. . . . *Fourth*, the
> proceedings must have terminated in favor of the plaintiff.
> *Finally*, the plaintiff must establish that damages were inflicted
> upon the plaintiff by arrest or imprisonment, by seizure of
> property, or by other special injury which would not necessarily
> result in all suits prosecuted to recover for a like cause of action.

*Campbell*, 852 A.2d at 1045 (citation omitted; emphasis added).  The prior civil proceeding at

issue is the "California Action" discussed above.  This action arose out of a complaint filed by

Plaintiff in the United States District Court for the Central District of California on November

16, 2005.[12]  This complaint was subsequently voluntarily dismissed by Plaintiff.

Plaintiff contends that Richter's malicious use of civil process claim must be dismissed

because he  fails to allege any facts to support the required element of damages, *i.e.*, the fifth

element discussed above.  The damages alleged in the Counterclaim are as follows:

> As a direct result of [the California Action], both the Blums, as
> well as William Richter, suffered personal and economic harm.
> The claims of the lawsuit have damaged the reputations of each of

---

[12]      *See* Factual Background and Procedural History *supra*.

> the counter-claimants.  The stress of the lawsuit and the ensuing
> struggle for control of RAWA by Schwartz and his allies caused
> Richter to suffer such stress that he became physically ill and was
> hospitalized.  Richter continues to suffer ill effects, and these may
> be permanent.

(Counter-Compl. ¶ 30.)  After reviewing the decisions cited by the parties, this Court concludes

that such allegations are insufficient to support a claim for malicious use of civil process.  As this

Court has previously explained:

> In *North Point Construction Co. v. Sagner*, 44 A.2d 441 (Md.
> 1945), Maryland's highest court has stated clearly, "[t]he mere
> expense and annoyance of defending a civil action is not a
> sufficient special damage or injury to sustain an action for
> malicious prosecution."  *Id.* at 445. . . . Elliott's emotional and
> psychological injuries, for which he has not sought medical
> treatment and which have not been tied to any adverse physical
> condition, cannot serve as the basis for special damages.
> Otherwise, the stress associated with any lawsuit would satisfy the
> special damages element of the tort of malicious use of process.
> That would just about be a complete contravention of the
> requirement that special damages are those "which would not
> necessarily result in all suits prosecuted to recover for a like cause
> of action."  *Siegman v. Equitable Trust Co.*, 297 A.2d 758, 762
> (Md. 1972).

*Elliot v. Evans*, 942 F. Supp. 238, 242 (D. Md. 1996); *see also One Thousand Fleet*, 694 A.2d at

959 (citing *Sagner* with approval).  This Court finds that Defendant Richter's allegations

regarding "special injuries" are insufficient to support a claim for malicious use of civil process.

Accordingly, Plaintiff's Motion to Dismiss is GRANTED with respect to the malicious use of

civil process claim asserted by Defendant Richter.[13]

---

[13]     As noted above, the California Action was voluntarily dismissed without
prejudice at Plaintiff's request.  As a result, Plaintiff contends that Richter cannot support the
required element of a "favorable termination," *i.e.*, the fourth element discussed above.
Although Maryland courts have suggested that some level of adjudication is required to satisfy
this element, *cf. One Thousand Fleet*, 694 A.2d at 958 ("A favorable adjudication may be by a

C.      **Tortious Interference with Economic Relationship.**

The elements of a claim for tortious interference with economic relationship are:

> (1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Alexander & Alexander Inc. v. B. Dixon Evander & Assoc., Inc.*, 650 A.2d 260, 269 (Md. 1994) (citations omitted).  Plaintiff moves to dismiss this claim on grounds that Richter fails to allege facts to support the existence of some lawful business or economic relationship that was allegedly damaged, *i.e.*, the second element discussed above.  After reviewing Defendants' papers, this Court concludes that Defendants have failed to allege sufficient facts with respect to this element on behalf of Richter.  (*See* Paper No. 13 p. 11 (Suggesting that Plaintiff "filed the California lawsuit because he didn't want Blum to continue running the company" but making no reference to Richter).)  Accordingly, Plaintiff's Motion to Dismiss is GRANTED with respect to the tortious interference with economic relationship claim asserted by Defendant Richter.

## CONCLUSION

For the above reasons, Plaintiff's Motion to Dismiss the Counterclaims (Paper No. 12), Defendants' Motion to Dismiss the Complaint (Paper No. 15), and Defendants' Motion for

---

judgment rendered by a court after trial, or upon demurrer or its equivalent"), whether a voluntary dismissal might constitute a favorable termination appears to be an open question of law in Maryland.  *Cf.* Vitauts M. Gulbis, *Nature of Termination of Civil Action Required to Satisfy Element of Favorable Termination to Support Action for Malicious Prosecution*, 30 A.L.R.4th 572, at § 15 (1984) (collecting decisions from States other than Maryland where courts have held that a voluntary dismissal, by the plaintiff, of the underlying civil proceeding constitutes a favorable termination for the purposes of a subsequent malicious prosecution action).  This Court need not reach this issue as Richter's allegations regarding "special injuries" are insufficient.

Summary Judgment (Paper No. 31) are GRANTED.  As a result, this case will be CLOSED.  A

separate Order follows.


Dated: August 17, 2007                           /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge